# Malone, Appellant, *v.* Hosfeld.

*Mechanic's lien—Alteration or construction—Act of June 4, 1901, P. L. 431—Constitutional law.*

1. Where in a proceeding under a mechanic's lien, the evidence descriptive of changes made in an old building is uncontradicted, the duty is cast upon the trial judge of determining whether the structure against which the claim was filed was an altered or a new one.

2. Under the decisions prior to the Act of June 4, 1901, P. L. 431, it was the extent and character of the alterations, and not the mere change of the purpose of the building that was the test by which to determine whether they constituted an erection or construction of the building, or mere alteration.   The idea which ran through all the cases was newness of structure in the main mass of the building—that entire change of external appearance which denoted a different building from that which gave place to it, though into the composition of the new structure some of the old parts may have entered.

3. If sec. three of the Act of June 4, 1901, P. L. 431, is to be construed so to extend the right to file a lien for "erection and construction," to cases not coming up to the standard set by the prior decisions, it must be deemed to be clearly divergent from and an advance upon the mechanic's lien law as it stood prior to the time when the present constitution went into effect and, therefore, is, to that extent, in conflict with sec. 7, art. III, of the constitution.

Argued Dec. 9, 1912.   Appeal, No. 250, Oct. T., 1912, by plaintiffs, from judgment of C. P. No. 2, Phila. Co., Sept. T., 1910, No. 1,557, M. L. D., for defendant non obstante veredicto in case of Edwin B. Maline and Charles M. Strickler, trading as Malone & Sons, v. George W. Hosfeld, Owner, and John A. Codori, trading as John A. Codori & Co., Contractor.   Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ.   Affirmed.

Scire facias sur mechanic's lien.

At the trial the jury returned a verdict for plaintiff for $213.86.

On a rule for judgment for defendant n. o. v., STAPLES, P. J., filed an opinion which was in part as follows:

The undisputed testimony was that No. 1237 Vine street was an old three-story and attic brick building arranged for a store in front of the first floor, and for a dwelling throughout the rest of the building, with an outside privy and well, and that No. 1235 Vine street was practically in its present condition, a commercial or manufacturing building, with an office on the first floor, the building being over 100 years old. The two buildings were practically made into one; all of the partitions of No. 1237 were removed; the rear wall was removed; the privy torn down and the privy well filled up; all the floors were either raised or lowered and a new brick addition upon stone foundations was built in the rear. It was seventeen feet wide by twenty-two feet deep, three stories high, and included a fire tower. On the first floor of 1237 a new bulk window was constructed, which included a door; and on the second and third floors front, the dwelling house windows were cut down to the level of the floors so as to make doors out of them. The stairs were torn out, and when completed there were no stairs in No. 1237 Vine street, excepting those in the new fire tower in the rear. The fourth or attic floor was completely removed and two-thirds of the roof was put on new. There was no evidence, however, that there was any change in its shape, etc.

After these changes, there remained of the original store and dwelling the front façade of the building, excepting the new bulk window on the first floor and the newly made doors on the second and third floors; and, also remaining, the party walls right and left, and one-third of the roof. The remainder of 1237 was new, or old reconstructed, and the building was no longer a store and dwelling, but a part of a manufacturing building connected with 1235 Vine street by three openings in the party wall on each floor, eight feet by eight feet, without any separating doors; while on the first floor front, the opening was sixteen by eighteen feet wide and so finished that the front of both 1235 and 1237 Vine street was one single office

without sign of a division line. In No. 1235 Vine street, what had formerly been a door into the office was made into a window, and other alterations made so as to finish it in keeping with the rest of the front, and a new floor for the front offices partly in each of Nos. 1235 and 1237 Vine street, was put in. The stairways of the second and third floors were torn out and placed at another point, the openings boarded over and the flooring was continued through the party wall from one side to the other.

The plaintiffs furnished lumber to the contractors towards the work done upon these buildings and which actually entered into the same, amounting to the sum of $189.58, which, with interest, made the total claim of the plaintiffs at the time of the trial $213.84.

While there were several questions raised by the defendant in support of his contention, the only one we need to consider is whether or not under the contract and the work actually done and for which the lumber was furnished, it was actually used in "alterations or repairs," or in "a substantial addition" to Nos. 1235–1237 Vine street. If it were furnished for "alterations or repairs," then the plaintiffs were not entitled to recover, for they did not comply with the requirements of the statute of June 4, 1901, sec. 2, P. L. 431, which provides that:

"In case of a sub-contractor .... notice of an intention to file a claim therefor .... shall have been given to the owners, etc., on or before the day the claimants .... furnished the last of their materials."

No such notice was given..

If the lumber were furnished for a "substantial addition" to Nos. 1235–1237 Vine street, then the claimants complied with the statute as to notice and lien and were entitled to recover. There was no dispute in the evidence as to whether the work done was for "alterations" or "a substantial addition," and the question was therefore for the court: Mehl v. Fisher, 13 Pa. Superior Ct. 330; Porter v. Weightman, 29 Pa. Superior Ct. 488; Patterson v. Frazier, 123 Pa. 414.

And the court is largely to be guided in arriving at its conclusion by the fact of whether the work done was a "change which indicates and results from newness of structure in the main mass of the building:" Caldwell v. Keating, 18 Pa. Superior Ct. 297.

The court must consider not only the changed appearance but the cause of it: Caldwell v. Keating, 18 Pa. Superior Ct. 297.

The work done by the contractor did not change the exterior walls nor the roof of the old buildings, which had stood there for over 100 years, except that the rear wall and part of the west wall of 1237 were torn down and a new roof put on a part of the buildings. In our opinion, the three-story tower addition, the changes in the floors and windows, and the taking down of the partitions, did not so change the buildings as to give them, or either of them, a new character or impress one with the "newness of structure." They were still the same old buildings and homogeneous mass with "alterations and repairs made in them." The throwing the lower front floor into one office and putting in a new bulkhead window and door, changing them from an office and a store into one office, did not so affect the whole building, even along with all the other improvements, as to give it the character of a new structure. Citing Goeringer v. Schappert, 17 Pa. Superior Ct. 293; Caldwell v. Keating, 18 Pa. Superior Ct. 297; Kolb v. Church, 18 Pa. Superior Ct. 477; Smyers v. Beam, 158 Pa. 57; DeWald v. Woog, 158 Pa. 497, and Warren v. Freeman, 187 Pa. 455.

In the light of the foregoing cases and rulings upon the facts therein contained applied to the present case, we hold that the work done and materials furnished were so done and furnished in the alteration of Nos. 1235 and 1237 Vine street, and that they did not enter into the construction of a new structure.

And now,—1912, in accordance with the foregoing opinion, the rule to show cause why judgment non obstante veredicto should not be entered in favor of the defendant,

is made absolute, and judgment is entered in favor of the defendant and against the plaintiff.

*Error assigned* was in entering judgment for defendant n. o. v.

*Henry Preston Erdman*, with him *Geo. R. Van Dusen, Grover Cleveland Ladner, C. Wilfred Conard* and *Harvey Gourley*, for appellants.—Where an old building has. been practically built anew or a substantial addition has been built to an old building, a lien has been allowed for a new construction before and since the act of 1901, which was only a codification of the existing law: Lightfoot v. Krug, 35 Pa. 348; Pretz's App., 35 Pa. 349; Harman v. Cummings, 43 Pa. 322; Hills' Estate, 2 Clark, 96; Hershey v. Shenk, 58 Pa. 382; Dunbar v. Foundry, 210 Pa. 58; Parrish's App., 83 Pa. 111; Nelson v. Campbell, 28 Pa. 156; Armstrong v. Ware, 20 Pa. 519; Grable v. Helman, 5 Pa. Superior Ct. 324.

*James C. Sellers*, with him *Henry P. Orlemann*, for appellee.—The opinion of the court below, and the authorities cited in it, seem conclusive of the question that the work done on the buildings which are the subject of appellant's lien, was the alteration of old structures and not the erection and construction of a new one: DeWald v. Woog, 158 Pa. 497; McDowell v. Riley, 16 Pa. Superior Ct. 515; Hothersall v. Rust, 18 Pa. Superior Ct. 495; Chester City Presbyterian Church v. Conlin, 19 Pa. Superior Ct. 515.

The cases cited by the court below and in the foregoing argument show clearly that, prior to the act of 1901, and the present constitution, the changes made in the buildings which are the subject of the present lien did not constitute a new erection or construction, and no lien could have been filed for them as such. If the act of 1901 was intended to change this established rule of law, and to authorize a claim for erection and construction under

such circumstances, it offends to that extent against the constitutional prohibition: Page v. Carr, 232 Pa. 371; Vulcanite Portland Cement Co. v. Allison, 220 Pa. 382; Vulcanite Paving Co. v. Transit Co., 220 Pa. 603; Henry Taylor Lumber Co. v. Carnegie Institute, 225 Pa. 486; Sterling Bronze Co. v. Improvement Assn., 226 Pa. 475.

*Henry Preston Erdman*, for appellants, in reply.—All the decisions which have declared parts of the act of 1901 unconstitutional have done so because the section has provided for something which was not in the law prior to the constitution of 1874 and was therefore special legislation providing or changing methods for the collection of debts. In so far as the act merely codifies and regulates the law as it existed before 1874 it has repeatedly been held constitutional: Getz v. Brubaker, 25 Pa. Superior Ct. 303; Page v. Carr, 232 Pa. 371; Felin v. Locust Realty Co., 232 Pa. 123; Nagle v. Garrigues, 46 Pa. Superior Ct. 155.

OPINION BY RICE, P. J., February 27, 1913:

In the mechanic's claim in question the building was described as "a brick building, four stories in front and three stories in the rear, known as Nos. 1235 and 1237 Vine street, forming a single plant used for carrying on the business of sign painting," and the claim was for the price of "materials furnished and supplied toward the erection and construction of said building." The learned trial judge specially presiding held, in a well-considered opinion, "that the work done and materials furnished were so done and furnished in the alteration of Nos. 1235 and 1237 Vine street and that they did not enter into the construction of a new structure." We are of opinion that this conclusion is in accordance with the facts testified to by the plaintiff's witnesses (the defendants offered no evidence), and is supported by the authorities cited in his opinion. The evidence descriptive of the changes made in the old building, being uncontradicted, casts upon the trial judge the duty of determining

whether the structure against which the claim was filed was an altered or a new one: Warren v. Freeman, 187 Pa. 455. When the facts are undisputed, it is for the court to determine what does or does not constitute a new building: Porter v. Weightman, 29 Pa. Superior Ct. 488. As we concur in the learned judge's conclusion above stated, it necessarily follows that the lien cannot be sustained as for a new erection or construction, unless the mechanic's lien law upon that subject has been changed by the act of 1901. Nor can it be sustained as a lien for alteration and repair, because the statutory provisions relating to that class of claims were not complied with. If it is sustainable at all, it is because it comes within this clause of sec. 3 of the Act of June 4, 1901, P. L. 431: "Every adaptation of an old structure or other improvement to a new or distinct use, which effects a material change in the interior or exterior thereof, shall also be deemed an erection or construction thereof." We are not prepared to say that this clause would not bear a construction which would include a case like the present, and, therefore, it becomes necessary to consider whether and to what extent it is a valid enactment. Under the old law, it was the extent and character of the alterations, and not the mere change of purpose of the building, that was the test by which to determine whether they constitute an erection or construction of a building, within the meaning of the statute: Norris's App., 30 Pa. 122. As to the extent and character of the alterations required, the rule established by the decisions was thus stated by AGNEW, J., in Miller v. Hershey, 59 Pa. 64: "The idea which runs throughout all the cases is newness of structure in the main mass of the building—that entire change of external appearance which denotes a different building from that which gave place to it, though into the composition of the new structure some of the old parts may have entered. This newness of construction must be in the exterior, the main plan of the building, and not in its interior arrangements." This construction of the act,

relating to the subject of the "erection or construction" of buildings, was recognized and applied in a long line of cases prior to the act of 1901, amongst the latest of which are Warren v. Freeman, 187 Pa. 455, in the Supreme Court, and Caldwell v. Keating, 18 Pa. Superior Ct. 297, in this court. If the foregoing clause of the act of 1901 was intended to change this settled law, and to extend the right to file a lien for "erection and construction" to cases not coming up to this well-established standard, it must be deemed to be clearly divergent from and an advance upon the mechanic's lien law as it stood prior to the time when our present constitution went into effect, and, therefore, is, to that extent, in conflict with sec. 7, art. III of the constitution: Vulcanite Portland Cement Co. v. Allison, 220 Pa. 382; Vulcanite Paving Co. v. Phila. Rapid Transit Co., 220 Pa. 603; Henry Taylor Lumber Co. v. Carnegie Institute, 225 Pa. 486; Sterling Bronze Co. v. Syria Improvement Assn., 226 Pa. 475; Page v. Carr, 232 Pa. 371; Sax v. School Dist., 237 Pa. 68. In an opinion filed herewith, in Sumption v. Rogers, ante, p. 109, we have considered this general subject at considerable length, and will not go over the ground again in this case. In any view that may be taken of it, we think the court was right in entering judgment for the defendant non obstante veredicto.

The judgment is affirmed.